UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT JACKSON, | 21 Civ. 05037 |
| Plaintiff, | |
| - against - | **ANSWER** |
| AMERICAN CIVIL LIBERTIES UNION, INC. and LUCIA TIAN, in her individual and professional capacity, | |
| Defendants. | |

Defendants, the American Civil Liberties Union, Inc. and Lucia Tian, as and for their Answer to the Complaint ("Complaint") filed by Plaintiff Robert Jackson ("Plaintiff"), respectfully show:

## NATURE OF THE CASE

1.      In response to the allegations of paragraph 1 of the Complaint, Defendants aver that the American Civil Liberties Union, Inc. (the "ACLU")[1] is one of the nation's oldest and most prominent not-for-profit organizations devoted to the causes of civil rights and civil liberties; that among its most important missions is to eliminate systemic racism; that, to that end, the ACLU devotes enormous resources to litigating and advocating for racial justice throughout society as a whole.  As importantly, the ACLU is in the forefront of employers in adopting programs and

---

[1] References to "the ACLU" are to the national organization which is the party to this action, as distinguished from its various separate state and local Affiliate organizations.

policies to increase the diversity of its workforce and to help ensure the advancement of employees of color, women, LGBTQ+ staff, and staff with disabilities.

      2.    Defendants deny the allegations of paragraph 2 of the Complaint and aver that the ACLU's mission of supporting racial justice indeed applies both internally and externally, as demonstrated, *inter alia,* by:

- Its Systemic Equality Agenda, which is a multi-year commitment to advance racial justice through the national headquarters and our state Affiliates – including a multi-million dollar investment to build ACLU's 12 affiliates in the South, where millions of Black Americans reside;

- Its formal, documented program entitled Systemic Equality Internal Commitments in which the ACLU embraces key internal action areas such as recruiting and hiring from more diverse talent pools, retaining and promoting Black talent, engaging Black-owned contractors, and partnering with Black-owned financial institutions and businesses;

- Its programs to build internship opportunities for Black, Indigenous, people of color ("BIPOC") college students; by its creation and support of an Equity, Diversity & Inclusion Council which serves as a "think tank" for reviewing and evaluating new ACLU equity, diversity, inclusiveness & belonging ("EDIB") initiatives and supports working groups designed to build equity

2

and inclusion initiatives in tandem with the EDIB team;

- Its Restorative Inclusion Practice, featuring training on building an inclusive team culture and repairing harm when it occurs;

- Its support for Employee Resource Groups, including a Black men's Employee Resource Group whose mission includes to advance Black men to positions of leadership, to ensure the recognition of their expertise, to provide mentorships by Black men within the organization, to promote professional development/training through paid fellowships and internships and to provide a networking pipeline that values diversity and inclusion.

- Its creation, in 2019, of the position of and the hiring of its first Chief Equity and Inclusion Officer, who provides vision, leadership, and direction for the ACLU's nationwide strategy to support equity, diversity, inclusion and belonging across all aspects of the organization's work and efforts, and who serves as both the internal and external ambassador on the importance of EDIB as a crucial cornerstone of the ACLU's culture of belonging.  (In addition, there are five other full-time positions at ACLU dedicated solely to advancing EDIB at the ACLU and its state and local Affiliate organizations.)

- Its devotion of substantial financial resources to these efforts and initiatives: In the budget for its current fiscal year alone, the ACLU

(excluding its state and local Affiliate organizations) has committed over $2.1 million to further its mission to ensure equity, diversity, inclusion, and belonging within the organization and it has strongly supported the EDIB initiatives undertaken by its state and local Affiliates by providing financial grants and operational resources.

These and other efforts by the ACLU and its state and local Affiliates to create an internal work environment that in all respects is supportive of racial justice are ongoing and have borne substantial fruit:

- 5 of the 12 ACLU State Affiliates in the South are led by Directors who are Black;

- Fully 42% of all of the ACLU State Affiliate Directors are employees of color;

- The ACLU's senior-most leadership ranks (Principal and Chief categories) is represented by 16.2% of staff who identify as African American/Black along with 15.9% at the next senior levels (Senior categories);

- Since 2018, the attrition rate of African American/Black staff has been reduced by nearly 50%.  And, overall, the ACLU today is represented by 17.5% staff who identify as African American/Black, based on self-reported demographic data, and for the first time in the ACLU's history, employees of color represent over 50% of all staff.  In like fashion, the ACLU's highly diverse National Board of

Directors is represented by 60% people of color, the 13-member
Executive Committee, which is delegated with primary fiduciary
and major governance responsibilities, is represented by 85.7%
people of color, and in January 2021, the ACLU Board elected
Deborah Archer as its President, the first Black woman to lead the
Board.

3.      Defendants deny the allegations contained in paragraph 3 of the
Complaint and aver that the ACLU welcomes and encourages complaints about systemic
racism in order to assist in furthering its mission to eliminate all vestiges and
perceptions of racism within and without the organization. Indeed, the ACLU maintains
a comprehensive policy and procedure through which employees are encouraged to
raise complaints of any form of discrimination or harassment in the workplace, as well
as a separate 'restorative inclusion' process through its EDIB unit to address
microaggressions in the workplace.  Defendants further aver, at the same time, that in
order to fulfill its mission, the ACLU legitimately expects its employees to perform their
job duties in a timely, competent, and diligent manner and it was solely the failure of
Plaintiff, Robert Jackson, to do so that led eventually, and notwithstanding the ACLU's
efforts to retain him, to the termination of his employment.  Plaintiff's race, and any
legally protected activity in which he may have engaged, were not, in any shape or
manner, factors in the employment decisions complained of in the Complaint.

4.      With respect to the allegations contained in paragraph 4 of the
Complaint Defendants admit that several Black men made the speech described at a

5

Southern Convening, a meeting of representatives of the ACLU and a number of its Affiliate organizations from Southern states and aver that several of the individuals who spoke out along with Plaintiff have remained with the organization, receiving new, more favorable assignments and even retention bonuses, thereby contradicting Plaintiff's assertion that staff criticism leads to retaliation.

5.     In response to the allegations contained in paragraph 5 of the Complaint, Defendants admit that the speakers described their perceptions regarding the advancement of Black staff and suggested certain measures to further such advancement, *all of which measures have been adopted and/or are being pursued by the ACLU as part of the ACLU's mission to eliminate systemic racism both within and without the organization.*  Thus, for example, while one of the speakers called for "a dedicated pipeline to senior leadership specifically for African-Americans," the ACLU actually has been monitoring attrition rates for Black employees for 3 years, has implemented a dedicated pipeline program called "Leader U," which is "designed to support the advancement and leadership of underrepresented staff, including staff of color, women, LGBTQ+ staff, and staff with disabilities," and has created fellowship programs to bring recent college graduates from underrepresented backgrounds into the organization.  While the speaker called for "paid internships across the organization" in order to "dismantle the barriers that prevent people from working with us," the ACLU's internships, since at least 2017 and for that very reason, have all been paid.  While the speaker called for a "dedicated policy of promoting from within," the ACLU's internal commitments on Systemic Equality provide for exactly that and, to that end, every six months the attrition rates of every department are

4824-2610-4046.10

examined, in part to seek out promotional opportunities for internal candidates. While the speaker called for "more dedicated spaces for Black people to come together," the ACLU provides such spaces by supporting, among others, Black Men's and Black Women's Employee Resource Groups.  In short, the ACLU is closely aligned with the goals and priorities outlined by the speakers at the Southern Convening.

6.	Defendants deny the allegations contained in paragraph 6 of the Complaint and aver that, in fact, Defendant Tian complimented Plaintiff for the manner in which Plaintiff and the other Black men presented their concerns at the Southern Convening.  While Plaintiff, for purposes of this lawsuit, has alleged that, when he returned from the Southern Convening, Defendant Tian told Plaintiff to "keep quiet" about the subjects of the speech, immediately following his conversation with Tian about the speech he expressed a directly opposite sentiment when he informed Tian in writing "*Just about everyone on the team (you included) have affirmed that you have my back and that you all recognized the disproportionate burden I carry already. Thank you for picking such a thoughtful team; I feel safe, welcomed, and honored frankly.*"

7.	Defendants deny the allegations contained in paragraph 7 of the Complaint, and aver that notwithstanding Plaintiff's repeated and serious failures to adequately perform his job responsibilities, Defendants made extraordinary efforts to preserve his employment and retain him as an employee of the ACLU.  Under ACLU policy, Plaintiff was a probationary employee, meaning that his employment could be terminated "at will" and at any time.  Nevertheless, rather than terminating his

7

employment, as the ACLU policies and practices permit, when he failed to successfully perform his duties (and when it became clear that he had misrepresented his skills and experience in applying for employment at the ACLU), the ACLU gave him another opportunity to succeed by offering to him the opportunity to transfer to a different, more junior, position that appeared to be more suited to his skills and abilities, with the opportunity to receive a closer degree of mentoring and supervision from a different manager.  As per the ACLU's written policy and usual practice, when he accepted the ACLU's offer to move to a new position he was given a new probationary period.  It was only after Plaintiff again failed to properly perform his duties in his new position that the ACLU determined that he did not successfully complete probation and his employment could not continue, and it offered him, a probationary employee, a generous glidepath out of the organization including two additional months of employment, salary and full benefits followed by yet another month of salary and reimbursement for COBRA benefits, even though ACLU policy does not provide for any transition benefits for probationary employees.

8.      Defendants deny the allegations contained in paragraph 8 of the Complaint and aver that the ACLU welcomes and encourages complaints about systemic racism in order to assist in furthering its mission to eliminate all vestiges and perceptions of racism within and without the organization, that ACLU employees speak out openly and freely about such matters, and that no such employee has been retaliated against in any manner for doing so.

9.      Defendants deny the allegations contained in paragraph 9 of the Complaint and aver that, as outlined above, Plaintiff's employment was terminated solely because of his serious failure to adequately perform the responsibilities of his position by, and merely by way of example: repeatedly missing deadlines, submitting work product that was unreadable and/or contained major numerical and clerical errors, demonstrating a lack of basic data analysis and coding skills (all contrary to representations Plaintiff made regarding his qualifications in applying for employment with the ACLU and notwithstanding the ACLU's efforts to assist him).

10.     Defendants deny the allegations contained in paragraph 10 of the Complaint and aver that its treatment of Plaintiff was in all respects lawful, equitable, and consistent with the policies of the ACLU.

## JURISDICTION AND VENUE

11.     Paragraph 11 of the Complaint purports to set forth a legal conclusion regarding this court's jurisdiction to which no responsive pleading is required. To the extent, if any, that this paragraph may be read as setting forth allegations to which a response is required, Defendants admit the allegations contained in paragraph 11 of the Complaint, except deny that Plaintiff suffered any "deprivation of [his] rights" under the cited statute.

12.     Paragraph 12 of the Complaint purports to set forth a legal conclusion regarding this court's supplemental jurisdiction to which no responsive pleading is required. To the extent, if any, that this paragraph may be read as setting forth allegations to which a response is required, Defendants admit the allegations

4824-2610-4046.10

contained in paragraph 12 of the Complaint, except deny that Plaintiff has asserted or possesses any legally-cognizable claims under the cited statutes.

13.     Paragraph 13 of the Complaint purports to set forth a legal conclusion regarding venue to which no responsive pleading is required. To the extent, if any, that this paragraph may be read as setting forth allegations to which a response is required, Defendants admit the allegations contained in paragraph 13 of the Complaint, except deny that any "unlawful employment practices" occurred.

## ADMINISTRATIVE PREREQUISITES

14.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint, except deny that, to their knowledge, Plaintiff has filed a Charge of Discrimination with the Equal Employment Opportunity Commission, a jurisdictional prerequisite to suit.

15.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint.

16.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint.

## PARTIES

17.     Defendants admit the allegations contained in paragraph 17 of the Complaint, except deny knowledge or information sufficient to form a belief as to Plaintiff's residence.

18.     Defendants admit the allegations contained in paragraph 18 of the Complaint.

19.     Defendants admit the allegations contained in paragraph 19 of the Complaint.

20.     Defendants admit the allegations contained in paragraph 20 of the Complaint.

21.     Defendants admit the allegations contained in paragraph 21 of the Complaint.

22.     Defendants deny the allegations contained in paragraph 22 of the Complaint except admit that, at certain times, Tian was among those responsible for overseeing Plaintiff's work.

23.     Defendants deny the allegations contained in paragraph 23 of the Complaint.

## FACTS

24.     Defendants admit the allegations contained in paragraph 24 of the Complaint, except aver that his initial title was "Special Projects Lead," not "Associate Director."

25.     Defendants admit the allegations contained in paragraph 25 of the Complaint.

11

26.     With respect to the allegations contained in paragraph 26 of the Complaint, Defendants admit that Plaintiff was a probationary employee who, under ACLU policy, was subject to evaluation throughout his probationary period and was subject to termination at any time during the probationary period.

27.     Defendants deny the allegations contained in paragraph 27 of the Complaint and aver that to the extent its policies were applied "differently" to Plaintiff it was that those policies were applied in a more lenient and generous manner to Plaintiff in an effort to retain him as an employee of the ACLU.

28.     Defendants deny the allegations contained in paragraph 28 of the Complaint and aver that deficiencies in his work performance became apparent and were communicated to him, orally and in writing, commencing in the early weeks of his employment and well before the 2019 Southern Convening.

29.     With respect to the allegations contained in paragraph 29 of the Complaint, Defendants deny that Plaintiff was "entrusted with reviewing the organization's budget" (which, in any event, was not $800,000,000 as alleged) and aver that the initial assignment given to Plaintiff was a relatively simple project involving the creation of a set of tables and charts to show how organizational money and time are spent across its issue areas.  The time data came from a simple survey of internal respondents and the financial data came directly from the Finance Department and did not require analysis by Plaintiff.  This straightforward assignment (the "work-study project"), previously handled by the Finance Department, was one that a typical Data Analyst could be expected to complete in at most three weeks (but which was projected

12

to be completed within six weeks to allow for unexpected delays), was given to Plaintiff to enable him to commence his employment with a quick positive accomplishment.

30.    Defendants deny the allegations contained in paragraph 30 of the Complaint.

31.    Defendants deny the allegations contained in paragraph 31 of the Complaint and aver that Plaintiff's failure to timely and adequately complete the work-study project was a matter of great concern to all of the stakeholders in the project, including Budget Director Karalyn Bonfanti, who wrote to Tian and Plaintiff that Plaintiff's submission, already long overdue, was "less close to final product than I was anticipating receiving at this point," that it contained "significant formatting and editing needs," that its introduction was "just dropped in from the survey request we sent to staff.  That isn't appropriate," that "The charts cut off across pages and labels are not always clear/legible," that "the graphs have inconsistent labeling and formatting, with a duo-chrome color scheme (red for programmatic and blue for admin/capacity).  It's difficult to read and different than what we discussed."  Others in the department were forced to intervene to complete the project.

32.    Defendants deny the allegations contained in paragraph 32 of the Complaint.

33.    Defendants deny the allegations contained in paragraph 33 of the Complaint and aver that Plaintiff failed to perform and produce any substantive work product whatsoever on a project relating to mass incarceration.

13

4824-2610-4046.10

34.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint.

35.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the Complaint.

36.     Defendants deny the allegations contained in paragraph 36 of the Complaint.

37.     Defendants deny the allegations contained in paragraph 37 of the Complaint and aver that the ACLU encourages all employees to participate in its various affinity groups, including the Black and LGBTQ affinity groups, and maintains and supports those groups as part of its mission to aid in the retention and advancement of, and to create a culture of inclusion and belonging at the ACLU for, historically underrepresented groups.

38.     Defendants deny the allegations contained in paragraph 38 of the Complaint except admit that Plaintiff was assigned to attend the Southern Convening as part of his job duties.

39.     Defendants deny the allegations contained in paragraph 39 of the Complaint, except admit that the Southern Collective Convening in 2019 was the first gathering of ACLU state and local Affiliates in the South to advance goals of: (1) advancing a high impact and collaborative regional initiative, (2) supporting peer

14

learning, and (3) strengthening relationships between the national office and Affiliates and among those Affiliates, all with a focus on issues of racial justice.

40.     Defendants admit the allegations contained in paragraph 40 of the Complaint.

41.     Defendants deny the allegations contained in paragraph 41 of the Complaint, except admit that Plaintiff was asked to serve as one member of a large planning committee for the Southern Convening.

42.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint.

43.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of the Complaint.

44.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of the Complaint.

45.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of the Complaint except deny that the ACLU has a "pattern" of "denying promotions" to Black men and "forcing them out of the Organization" and aver that the ACLU undertakes extraordinary measures to support the advancement of Black people and members of other historically underrepresented groups within the organization.

4824-2610-4046.10

46.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of the Complaint, except admit that Moss appeared in the photograph as alleged which was taken at Sessions's invitation following his reference to having had a positive relationship while in Congress with a former ACLU President and a desire to send greetings and further aver that when Moss realized that certain employees were offended by the photograph she agreed to change the agenda for the Southern Convening to permit a group of Black men to discuss their experiences at the organization, including the offense taken to the photograph, and she also sent a communication expressing her regret to the entire organization.

47.     Defendants admit the allegations contained in paragraph 47 of the Complaint and aver that the ACLU has vigorously opposed the legacy of racism represented by various actions of former Attorney General Jeff Sessions. *See https://www.aclu.org/other/jeff-sessions-facts.*

48.     Defendants admit the allegations contained in paragraph 48 of the Complaint.

49.     Defendants deny knowledge or information sufficient to from a belief as to the allegations contained in paragraph 49 of the Complaint.

50.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50 of the Complaint.

16

51.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 of the Complaint.

52.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52 of the Complaint and aver that the photograph was taken at Sessions's invitation following his reference to having had a positive relationship while in Congress with a former ACLU President and a desire to send greetings when Moss realized that certain employees were offended by the photograph she agreed to change the agenda for the Southern Convening to permit a group of Black men to discuss their experiences at the organization, including the offense taken to the photograph, and she also  sent a communication expressing her regret to the entire organization.

53.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53 of the Complaint.

54.     Defendants admit the allegations contained in paragraph 54 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation regarding the number of attendees at the Southern Convening and aver that the attendees included employees of both the ACLU and of various of its state and local Affiliate organizations.

55.     With respect to the allegations contained in paragraph 55 of the Complaint, Defendants admit that Robert Stephens from the ACLU of North Carolina and Dillon Nettles from the ACLU of Alabama, and not Plaintiff, read from written

remarks but deny knowledge or information sufficient to form a belief as to the truth of the allegations as to how the remarks were prepared.

56.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56 of the Complaint, respectfully refer the Court to the document attached as Exhibit A to the Complaint for its full and complete text, and aver that the ACLU has undertaken and is undertaking extraordinary efforts to ensure that racism does not exist within its ranks and to support the advancement of historically underrepresented groups, including Black people.

57.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 57 of the Complaint, respectfully refer the Court to the document attached as Exhibit A to the Complaint for its full and complete text, and aver that the ACLU has undertaken and is undertaking extraordinary efforts to ensure that racism does not exist within its ranks and to support the advancement of historically underrepresented groups, including Black people.

58.     With respect to the allegations contained in paragraph 58 of the Complaint, Defendants admit that the speakers suggested various measures to address what they perceived as racism within the ACLU, all of which have been adopted and/or are being pursued by the ACLU.

59.     Defendants admit that Plaintiff described the complaints lodged during the Southern Convening in a manner essentially as alleged in paragraph 59 of the

Complaint, except aver that the ACLU takes extraordinary measures to ensure that structural barriers to promotions of Black men and women do not exist.

60.     Defendants admit the allegations contained in paragraph 60 of the Complaint.

61.     Defendants admit the allegations contained in paragraph 61 of the Complaint.

62.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Plaintiff "expected," as contained in paragraph 62 of the Complaint and aver that Defendants fully supported the expression of concerns by the Black men at the Southern Convening.

63.     Defendants deny the allegations contained in paragraph 63 of the Complaint and aver that, immediately following his conversation with Tian about the speech in which he now alleges, for purposes of this lawsuit, that she told him to "keep quiet" about such matters, he expressed a directly opposite sentiment when he informed Tian in writing "*Just about everyone on the team (you included) have affirmed that you have my back and that you all recognized the disproportionate burden I carry already. Thank you for picking such a thoughtful team; I feel safe, welcomed, and honored frankly.*"

64.     Defendants deny the allegations contained in paragraph 64 of the Complaint and aver that Tian encouraged Plaintiff to continue to express his concerns

4824-2610-4046.10

and to address them with Sophie Kim Goldmacher, Chief People Officer, and Amber Hikes, Chief Equity and Inclusion Officer.

65.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65 of the Complaint, except deny that Tian was "dismissive" of Plaintiff's concerns and aver that Plaintiff's own written words, at the time, reveal that Defendants were supportive of Plaintiff's concerns.

66.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66 of the Complaint regarding anonymous "rumors" allegedly heard by Plaintiff.

67.     Defendants deny the allegations contained in paragraph 67 of the Complaint.

68.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 of the Complaint, except deny that Plaintiff had received "uniformly positive feedback on his work" and aver that there were serious deficiencies in Plaintiff's work which had been brought to his attention both before the Southern Convening and continuing thereafter such as, by way of examples, a failure to communicate with his supervisors, failure to provide work product and/or providing work product containing serious numerical, formatting, and other errors.

69.     Defendants deny the allegations contained in paragraph 69 of the Complaint except admit that Plaintiff told Tian and Hikes that there were rumors of concerns about possible termination among some of the Black men employed by Affiliate organizations who had spoken at the Southern Convening and aver that Plaintiff was not employed by an Affiliate organization and that the decision to terminate Plaintiff's employment was made months after the Southern Convening and solely because of Plaintiff's serious failure to timely and properly perform his duties (which failures, as well as Defendants' constructive feedback offered to help him improve his performance, are seen in ample documentary proof) and only after Plaintiff failed to successfully complete his probationary period for the position for which he was hired, was offered the opportunity to take a new, more junior position in an effort to assist him in retaining his employment with the ACLU, and failed successfully to complete the probationary period for that new position as well.

70.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70 of the Complaint, except admit that Plaintiff requested, and was never denied, days off.

71.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71 of the Complaint, except deny that any efforts on the part of Plaintiff to right any perceived wrong at the ACLU were factors in the employment decisions complained of in the Complaint which were made solely because of Plaintiff's serious failures to timely and properly perform his duties.

4824-2610-4046.10

72.     With respect to the allegations contained in paragraph 72 of the Complaint, Defendants deny that Tian "summoned Plaintiff to her office" and aver that Plaintiff was instructed to focus on completing the work-study project that had been given to him as his initial assignment and on which his work was incomplete, of insufficient quality, and overdue (the original, very lenient timeline for the project called for Plaintiff to complete it by November 22 and by this point, in late December or early January, it still was not complete) rather than on the mass incarceration project on which Plaintiff had, to date, performed and produced no substantive work whatsoever.

73.     Defendants deny the allegations contained in paragraph 73 of the Complaint and aver that Plaintiff was instructed to focus on completing the work-study project that had been given to him as his initial assignment and which was incomplete, of insufficient quality, and overdue, rather than on the mass incarceration project on which Plaintiff had, to date, done no substantive work whatsoever.

74.     Defendants deny the allegations contained in paragraph 74 of the Complaint and aver that Plaintiff was instructed to focus on completing the work study project that had been given to him as his initial assignment and which was incomplete, of insufficient quality and overdue, rather than on the mass incarceration project on which Plaintiff had, to date, performed and produced no substantive work whatsoever.

75.     Defendants deny the allegations contained in paragraph 75 of the Complaint, and aver that Plaintiff was instructed to focus on completing the work-study project that had been given to him as his initial assignment and which was incomplete,

of insufficient quality and overdue, rather than on the mass incarceration project on which Plaintiff had, to date, performed and produced no substantive work whatsoever.

76.     Defendants deny the allegations contained in paragraph 76 of the Complaint and aver that Tian had long expressed to Plaintiff her concerns about the viability of the mass incarceration project and that deficiencies in Plaintiff's work performance, together with the specific nature of the deficiencies and guidance as to how to correct them, were brought to his attention both before and subsequent to the Southern Convening and throughout his employment.

77.     Defendants deny the allegations contained in paragraph 77 of the Complaint and aver that Plaintiff was instructed to focus on completing the work-study project that had been given to him as his initial assignment and which was incomplete, of insufficient quality and overdue, rather than on the mass incarceration project on which Plaintiff had, to date, done no substantive work whatsoever.

78.     Defendants deny the allegations contained in paragraph 78 of the Complaint, deny that Tian objected in any manner to Plaintiff's alleged protected activity or sent a "strong signal" that his employment was coming to a close because of such activity and aver that Tian instructed Plaintiff to focus on completing the work-study project that had been given to him as his initial assignment and which was incomplete, of insufficient quality and overdue.  Defendants further deny the allegations contained in paragraph 4 to paragraph 78 of the Complaint in that Plaintiff had been informed during the interview process and thereafter that the position would involve

23

strategic operational projects (such as finance-related projects) and had expressed enthusiasm about performing that type of work.

79.     Defendants deny the allegations contained in paragraph 79 of the Complaint and aver that Tian's disposition toward and treatment of Plaintiff was at all times respectful, professional, and consistent with the accomplishment of work-related objectives.

80.     Defendants deny the allegations contained in paragraph 80 of the Complaint and aver that Tian's disposition toward and treatment of Plaintiff was at all times respectful, professional, and consistent with the accomplishment of work-related objectives.

81.     Defendants deny the allegations contained in paragraph 81 of the Complaint and aver that Tian's disposition toward and treatment of Plaintiff was at all times respectful, professional, and consistent with the accomplishment of work-related objectives.

82.     Defendants deny the allegations contained in paragraph 82 of the Complaint and aver that Tian continued and increased the level of support she and her Deputy, Aaron Horowitz, provided to Plaintiff to assist him in completing the long-delayed work study project and that Tian's disposition toward and treatment of Plaintiff was at all times respectful, professional, and consistent with the accomplishment of work-related objectives.

83.     Defendants deny the allegations contained in paragraph 83 of the Complaint and aver that Tian continued and increased the level of support she and her Deputy, Aaron Horowitz, provided to Plaintiff to assist him in completing the long-delayed work study project and that Tian's disposition toward and treatment of Plaintiff was at all times respectful, professional, and consistent with the accomplishment of work-related objectives.

84.     Defendants deny the allegations contained in paragraph 84 of the Complaint and aver that the mass incarceration project was one of questionable validity and on which Plaintiff had done no substantive work, and that far from having his "responsibilities taken away," Plaintiff had failed to timely complete the primary assignment he was given, the work-study project, and was legitimately instructed to prioritize and complete that project, which he never did.

85.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 85 of the Complaint.

86.     Defendants admit the allegations contained in paragraph 86 of the Complaint and aver that to the extent there has been or is any actual or perceived "lack of African-American leadership at the organization," the ACLU is taking extraordinary measures to address it.

87.     Defendants admit the allegations contained in paragraph 87 of the Complaint.

4824-2610-4046.10

88.     Defendants admit the allegations contained in paragraph 88 of the Complaint.

89.     Defendants admit the allegations contained in paragraph 89 of the Complaint.

90.     Defendants deny the allegations contained in paragraph 90 of the Complaint and aver that Tian continued and increased the level of support she and Horowitz provided to Plaintiff to assist him in completing the long-delayed work-study project and that Tian's disposition toward and treatment of Plaintiff was at all times respectful, professional, and consistent with the accomplishment of work-related objectives.

91.     Defendants deny the allegations contained in paragraph 91 of the Complaint and aver that Plaintiff was not denied additional projects, he was legitimately instructed to prioritize and complete the primary assignment he was given, the work-study project, and that Tian's disposition toward and treatment of Plaintiff was at all times respectful, professional, and consistent with the accomplishment of work-related objectives.

92.     Defendants deny the allegations contained in paragraph 92 of the Complaint and aver that Tian's disposition toward and treatment of Plaintiff was at all times respectful, professional, and consistent with the accomplishment of work-related objectives.

93.     Defendants deny the allegations contained in paragraph 93 of the Complaint, except admit that Plaintiff provided a self-evaluation to Tian as part of the ongoing feedback conversations in which they were engaged.

94.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 94 of the Complaint.

95.     Defendants deny the allegations contained in paragraph 95 of the Complaint and aver that Tian's disposition toward and treatment of Plaintiff was at all times respectful, professional, and consistent with the accomplishment of work-related objectives.

96.     Defendants deny the allegations contained in paragraph 96 of the Complaint, except admit that Plaintiff was informed that his work performance was unsatisfactory.

97.     Defendants deny the allegations contained in paragraph 97 of the Complaint and aver that Plaintiff was informed of the specific areas in which his work performance was unsatisfactory as revealed by significant documentation to that effect.

98.     Defendants deny the allegations contained in paragraph 98 of the Complaint, except admit that Plaintiff met with Tian and Goldmacher in early February 2020.

99.     Defendants deny the allegations contained in paragraph 99 of the Complaint and aver that Plaintiff was informed that because his work performance

27

continued to be unsatisfactory he would not successfully complete his probationary period, that under ACLU policy and practice his employment could be terminated as a consequence but that, in order to provide him with closer guidance and supervision and preserve his employment with the ACLU, he was being offered the opportunity to continue his employment, in lieu of being terminated, in a more junior position as a Data Analyst.  Defendants further aver that Plaintiff was informed that while the applicable salary, under the ACLU salary scale, would be lower than his current salary, Plaintiff would retain his higher salary until the end of the fiscal year on March 31, 2020.

100.   Defendants deny the allegations contained in paragraph 100 of the Complaint and aver that Plaintiff's treatment was entirely in accord with or more favorable than ACLU policy, was not retaliatory or discriminatory in any respect, and was intended to preserve his employment, not to terminate him.

101.   Defendants deny the allegations contained in paragraph 101 of the Complaint and aver that, immediately following the meeting in which Plaintiff now alleges that he told Tian and Goldmacher that the decision to demote him was "racist," he wrote to Tian: "I know that this process has been a massive investment of time and effort by each of us.  Know that above all I admire our ability to approach this process with empathy and centering professional growth, and self-awareness."

102.   Defendants deny the allegations contained in paragraph 102 of the Complaint and aver that, as demonstrated by substantial contemporaneous documents, the ACLU did not hope that the demotion would cause Plaintiff to resign but, to the

4824-2610-4046.10

contrary, the ACLU intended to, and did, act in a manner that it was hoped would preserve his employment and provide him with an opportunity to succeed, rather than to terminate his employment as ACLU policy would have permitted.

103.    Defendants admit the allegations contained in paragraph 103 of the Complaint.

104.    Defendants deny the allegations contained in paragraph 104 of the Complaint, deny that Plaintiff had been given an "ultimatum," and deny that Plaintiff had "performed well."

105.    Defendants deny the allegations contained in paragraph 105 of the Complaint.

106.    Defendants deny the allegations contained in paragraph 106 of the Complaint, except admit that the meeting ended in the normal course.

107.    Defendants admit the allegations contained in paragraph 107 of the Complaint, except deny that Goldmacher was called upon to offer a "solution."

108.    Defendants deny the allegations contained in paragraph 108 of the Complaint, except admit that Goldmacher reiterated that the opportunity offered to Plaintiff was intended to be a way to continue his employment and to permit him to succeed at the ACLU.

109.    Defendants deny the allegations contained in paragraph 109 of the Complaint, except admit that Defendants informed Plaintiff that his former position

would not immediately be filled because it was hoped that with Defendants' further guidance and support Plaintiff would be able to grow into that role.

110.    Defendants deny the allegations contained in paragraph 110 of the Complaint.

111.    With respect to the allegations contained in paragraph 111 of the Complaint, Defendants admit that Goldmacher and Tian informed Plaintiff that the intention was to invest in him and his continued growth and success in the organization.

112.    Defendants deny the allegations contained in paragraph 112 of the Complaint, except admit that Plaintiff accepted the Data Analyst position which was offered to him as means of continuing his employment with the ACLU and to permit him to succeed at the ACLU.

113.    With respect to the allegations contained in paragraph 113 of the Complaint, Defendants admit that Plaintiff was permitted to take paid time off, but deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding his reasons therefor.

114.    Defendants admit the allegations contained in paragraph 114 of the Complaint, except deny that the meeting took place in early February and deny that Kelley is Tian's direct report.

115.    Defendants admit the allegations contained in paragraph 115 of the Complaint except aver that Plaintiff was informed in a meeting on February 4, 2020

30

(not after he returned from a leave of absence in late February) that in the Data Analyst position he would be reporting to Allison Kelley, Director of Engagement Analytics.

116.    Defendants deny the allegations contained in paragraph 116 of the Complaint, except admit that Plaintiff was informed that he would have a new six-month probationary position in the Data Analyst position, which was entirely consistent with ACLU policy and practice.

117.    Defendants deny the allegations contained in paragraph 117 of the Complaint and aver that ACLU policy expressly provides that "In the event that an existing employee moves to a new position within the ACLU, [they] will be subject to a new probationary period in their new position."

118.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 118 of the Complaint and aver that the ACLU's treatment of Plaintiff was at all times respectful, professional and consistent with or more favorable than that provided for in ACLU policy.

119.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 119 of the Complaint, except deny that Tian "interfered with" the assignments of any employee or "prevented them from advancing" within the ACLU.

120.    Defendants deny the allegations contained in paragraph 120 of the Complaint.

4824-2610-4046.10

121.     Defendants deny the allegations contained in paragraph 121 of the Complaint and respectfully refer the Court to the document cited therein for its full and complete terms, except admit that David Oliver voluntarily left the ACLU in or about November 2020, deny that the ACLU caused any "trauma" or "harm" to Oliver, and aver that all personnel decisions made by Defendants relating to David Oliver were made with the purpose and intent of furthering his ability to succeed in his employment with the ACLU and for legitimate reasons intended to most effectively serve the mission of the ACLU, and further aver that the circumstances relating to Mr. Oliver and his departure from the ACLU have no bearing whatsoever on the circumstances relating to the Plaintiff, whose employment was terminated solely by reason of his serious failure to adequately perform his duties after being given every opportunity to do so.

122.     Defendants deny the allegations contained in paragraph 122 of the Complaint, and respectfully refer the Court to the document cited therein for its full and complete terms.

123.     With respect to the allegations contained in paragraph 123 of the Complaint, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning anonymous "rumors" that Plaintiff claims to have heard.

124.     Defendants deny the allegations contained in paragraph 124 of the Complaint.

4824-2610-4046.10

125.     Defendants deny the allegations contained in paragraph 125 of the Complaint.

126.     With respect to the allegations contained in paragraph 126 of the Complaint, Defendants admit that Plaintiff was assigned to prepare a Dashboard tracking information about donations and aver that Plaintiff seriously failed to timely and adequately complete that project.

127.     Defendants deny the allegations contained in paragraph 127 of the Complaint and aver that the work product provided by Plaintiff in connection with the Dashboard project was untimely and wholly inadequate, that even after Plaintiff informed Kelley that the Dashboard was complete (long after the original deadline) it was not something that could be shown to the project stakeholders as it included, for example, charts that did not make sense, that had internal inconsistencies, percentages that did not add up to 100%, and other serious deficiencies, and continued to have these and other deficiencies even after Kelley informed Plaintiff of the problems and instructed him how to correct them, and further aver that the work Liz Fitzgerald, Director of Development complimented was the analytical work performed and provided by a former employee and given to Plaintiff, not Plaintiff's work, which involved only putting that analysis into a simple dashboard.

128.     With respect to the allegations contained in paragraph 128 of the Complaint, Defendants deny that Plaintiff's work on the dashboard was "exceptional" – to the contrary, it was untimely and wholly inadequate – and aver that Plaintiff's

unacceptable work performance was the sole basis for the personnel actions of which he complains in the Complaint.

129.   With respect to the allegations contained in paragraph 129 of the Complaint, Defendants deny that Plaintiff was "grossly overqualified" for the Data Analyst role and that he was reassigned to the Data Analyst role in retaliation for suggesting that the ACLU needed to address alleged structural racism within the organization, and aver that Plaintiff was assigned to the Data Analyst position as an alternative to termination after he failed satisfactorily in his initial position as Special Projects Lead, in an effort to retain him and to help him succeed in his employment with the ACLU.

130.   Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 130 of the Complaint.

131.   With respect to the allegations contained in paragraph 131 of the Complaint, Defendants deny that Plaintiff was assigned no further projects and aver that his work on additional assignments he was given by his supervisor was likewise inadequate and incomplete.

132.   Defendants deny the allegations contained in paragraph 132 of the Complaint, except admit that Plaintiff asked to help prepare the presentation described.

133.   Defendants admit the allegations contained in paragraph 133 of the Complaint.

34

134.    Defendants admit the allegations contained in paragraph 134 of the Complaint.

135.    Defendants admit the allegations contained in paragraph 135 of the Complaint.

136.    Defendants admit the allegations contained in paragraph 136 of the Complaint.

137.    Defendants admit the allegations contained in paragraph 137 of the Complaint.

138.    Defendants deny the allegations contained in paragraph 138 of the Complaint, except admit that Kelley approved Plaintiff's request to make the presentation internally to ACLU employees.

139.    With respect to the allegations contained in paragraph 139 of the Complaint, Defendants admit Plaintiff was unable to make a presentation concerning Data for Black Lives at an internal team meeting because there was insufficient time, and aver that his supervisor, Allison Kelley, requested, in writing, that instead of rushing through the presentation at the end of the meeting, he make the presentation at the outset of the next team meeting to ensure that he had as much time as necessary to present it fully.

140.    Defendants deny the allegations contained in paragraph 140 of the Complaint and aver that Kelley requested, in writing, that he make the presentation at

35

the outset of the next team meeting to ensure that he had as much time as necessary to present it fully.

141.    Defendants deny the allegations contained in paragraph 141 of the Complaint and aver that Kelley requested, in writing, that he make the presentation at the outset of the next team meeting to ensure that he had as much time as necessary to present it fully.

142.    Defendants deny the allegations contained in paragraph 142 of the Complaint.

143.    Defendants deny the allegations contained in paragraph 143 of the Complaint and aver that all of Tian's interactions with Plaintiff were conducted in a respectful and professional manner and in a good faith effort to advance the mission of the ACLU.

144.    Defendants deny the allegations contained in paragraph 144 of the Complaint.

145.    Defendants deny the allegations contained in paragraph 145 of the Complaint, except admit that the meeting ended in the normal course.

146.    Defendants deny the allegations contained in paragraph 146 of the Complaint, except admit that the performance review was conducted in a series of meetings in late June 2020, nearly at the end of Plaintiff's probationary period.

36

147.    With respect to the allegations contained in paragraph 147 of the Complaint, Defendants admit that a performance review was scheduled with Plaintiff in late June 2020, nearly at the end of Plaintiff's probationary period, and that it was consistent with the ACLU's policy and practice for Kelley, as Plaintiff's supervisor and overseeing his work since February 2020, to participate.

148.    Defendants deny the allegations contained in paragraph 148 of the Complaint and aver that its policies were in all respects applied to Plaintiff in a manner that was consistent with or more favorable to Plaintiff than its usual practices.

149.    Defendants deny the allegations contained in paragraph 149 of the Complaint, except admit that Plaintiff was informed in the meeting that his work on the Dashboard project had been wholly inadequate and the manner in which it had been inadequate, and when his work on the Dashboard and other projects assigned by Kelley continued to be untimely and inadequate, he was informed on July 1, 2020 that he had failed to successfully pass probation, all of which was consistent with the ACLU's policies and practices.

150.    With respect to the allegations contained in paragraph 150 of the Complaint, Defendants deny that the alleged discussion occurred at the performance review meeting but admit that once ACLU subsequently decided that Plaintiff's employment would be terminated, he was assigned to specific projects for Human Resources for the next two months to provide him with two additional months of employment, salary, and benefits with the ACLU before his termination would take effect.

151.    Defendants deny the allegations contained in paragraph 151 of the Complaint and aver that the reassignment of Plaintiff to the Data Analyst role was intended solely to assist him in succeeding in and preserving his employment with the ACLU.

152.    Defendants deny the allegations contained in paragraph 152 of the Complaint, except admit that, in order to assist Plaintiff in his transition to new employment, and even though he had been employed by the ACLU for only approximately nine months and as a probationary employee was entitled to no transition benefits, the ACLU offered Plaintiff a separation agreement in which he would receive, among other things, continued employment for two months followed by an additional month of salary and benefits, but at no time did Goldmacher or anyone else "pressure" Plaintiff to sign the agreement and, in fact, Plaintiff elected not to do so but he nevertheless was retained on payroll, with full salary and benefits, through August 31, 2020.

153.    Defendants deny the allegations contained in paragraph 153 of the Complaint and aver that the separation agreement was offered to assist Plaintiff in his transition to new employment, and that even though he had been employed by the ACLU for only approximately nine months and as a probationary employee was entitled to no transition benefits, he was offered, among other things, continued employment for two months followed by an additional month of salary and benefits.

154.    With respect to the allegations contained in paragraph 154 of the Complaint, Defendants admit that Plaintiff chose not to accept the separation

38

agreement but nevertheless received the two additional months of employment, with regular salary and benefits which had been offered.

155.    With respect to the allegations contained in paragraph 155 of the Complaint, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation regarding Plaintiff's reason for applying to the Leader U program but admit that Plaintiff applied for the program.

156.    With respect to the allegations contained in paragraph 156 of the Complaint, Defendants admit that Plaintiff was not accepted into the ACLU's Leader U program because the program, by its terms, is limited to employees who have successfully passed their probationary period and Plaintiff applied when he was still a probationary employee.

157.    Defendants deny the allegations contained in paragraph 157 of the Complaint and respectfully refer the Court to the document cited therein for its full and complete terms, and denies the allegations of Plaintiff contained therein.

158.    Defendants admit the allegations contained in paragraph 158 of the Complaint, and respectfully refer the Court to the document cited therein for its full and complete terms, and denies the allegations of Plaintiff contained therein.

159.    Defendants admit the allegations contained in paragraph 159 of the Complaint, except deny that the ACLU targeted Plaintiff for speaking out at the Southern Convening and aver that the sole basis for the personnel actions of the ACLU of which Plaintiff complains in the Complaint was his wholly unsatisfactory and

4824-2610-4046.10

untimely job performance, causing his failure twice to successfully complete his probationary period.

160.    Defendants deny the allegations contained in paragraph 160 of the Complaint.

161.    Defendants deny the allegations contained in paragraph 161 of the Complaint.

162.    Defendants deny the allegations contained in paragraph 162 of the Complaint, except admit that Plaintiff was informed on or about July 1, 2020 that his employment would not end until August 31, 2020.

163.    Defendants admit the allegations contained in paragraph 163 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff's farewell email was "heartfelt."

164.    With respect to the allegations contained in paragraph 164 of the Complaint, Defendants deny knowledge or information sufficient to form a belief as to whether Plaintiff was "heartened" and as to the truth of the allegation that the anonymous comments cited therein were made.

165.    Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 165 of the Complaint and respectfully refers the Court to the document cited therein for its full and complete terms, and avers that the quoted portion of such document does not accurately portray

the ACLU nor relate in any manner to the personnel actions of which Plaintiff complains in the Complaint, all of which actions were taken solely because of Plaintiff's serious failures to timely or adequately perform his duties and his failure to successfully pass probation.

## AS A FIRST CAUSE OF ACTION
## FOR VIOLATIONS OF SECTION 1981: DISCRIMINATION

166.    Defendants repeat and reallege their responses to the foregoing paragraphs and such responses are incorporated by reference as if set forth in full.

167.    Defendants admit the allegations contained in paragraph 167 of the Complaint.

168.    Defendants admit the allegations contained in paragraph 168 of the Complaint.

169.    Defendants deny the allegations contained in paragraph 169 of the Complaint.

170.    Defendants deny the allegations contained in paragraph 170 of the Complaint.

171.    Defendants deny the allegations contained in paragraph 171 of the Complaint.

172.    Defendants deny the allegations contained in paragraph 172 of the Complaint.

4824-2610-4046.10

**AS A SECOND CAUSE OF ACTION FOR VIOLATIONS**
**OF SECTION 1981: RETALIATION**

173.   Defendants repeat and reallege their responses to the foregoing paragraphs and such responses are incorporated by reference as if set forth in full.

174.   Defendants admit the allegations contained in paragraph 174 of the Complaint.

175.   Defendants admit the allegations contained in paragraph 175 of the Complaint.

176.   Defendants admit the allegations contained in paragraph 176 of the Complaint.

177.   Defendants deny the allegations contained in paragraph 177 of the Complaint.

178.   Defendants deny the allegations contained in paragraph 178 of the Complaint.

179.   Defendants deny the allegations contained in paragraph 179 of the Complaint.

180.   Defendants deny the allegations contained in paragraph 180 of the Complaint.

4824-2610-4046.10

## AS A THIRD CAUSE OF ACTION FOR VIOLATIONS
## OF THE NYSHRL: DISCRIMINATION

181.    Defendants repeat and reallege their responses to the foregoing paragraphs and such responses are incorporated by reference as if set forth in full.

182.    Defendants admit the allegations contained in paragraph 182 of the Complaint.

183.    Defendants admit the allegations contained in paragraph 183 of the Complaint.

184.    Defendants deny the allegations contained in paragraph 184 of the Complaint.

185.    Defendants deny the allegations contained in paragraph 185 of the Complaint.

186.    Defendants deny the allegations contained in paragraph 186 of the Complaint.

187.    Defendants deny the allegations contained in paragraph 187 of the Complaint.

## AS A FOURTH CAUSE OF ACTION FOR VIOLATIONS
## OF THE NYSHRL: RETALIATION

188.    Defendants repeat and reallege their responses to the foregoing paragraphs and such responses are incorporated by reference as if set forth in full.

4824-2610-4046.10

189.     Defendants admit the allegations contained in paragraph 189 of the Complaint.

190.     Defendants admit the allegations contained in paragraph 190 of the Complaint.

191.     Defendants deny the allegations contained in paragraph 191 of the Complaint.

192.     Defendants deny the allegations contained in paragraph 192 of the Complaint.

193.     Defendants deny the allegations contained in paragraph 193 of the Complaint.

194.     Defendants deny the allegations contained in paragraph 194 of the Complaint.

195.     Defendants deny the allegations contained in paragraph 195 of the Complaint.

## AS A FIFTH CAUSE OF ACTION FOR VIOLATIONS OF THE NYSHRL: AIDING AND ABETTING

196.     Defendants repeat and reallege their responses to the foregoing paragraphs and such responses are incorporated by reference as if set forth in full.

197.     Defendants admit the allegations contained in paragraph 197 of the Complaint.

198.    Defendants admit the allegations contained in paragraph 198 of the Complaint.

199.    Defendants deny the allegations contained in paragraph 199 of the Complaint.

200.    Defendants deny the allegations contained in paragraph 200 of the Complaint.

201.    Defendants deny the allegations contained in paragraph 201 of the Complaint.

202.    Defendants deny the allegations contained in paragraph 202 of the Complaint.

## AS A SIXTH CAUSE OF ACTION FOR VIOLATIONS
## OF THE NYSHRL: RETALIATION

203.    Defendants repeat and reallege their responses to the foregoing paragraphs and such responses are incorporated by reference as if set forth in full.

204.    Defendants admit the allegations contained in paragraph 204 of the Complaint.

205.    Defendants admit the allegations contained in paragraph 205 of the Complaint.

206.    Defendants deny the allegations contained in paragraph 206 of the Complaint.

45

207.    Defendants deny the allegations contained in paragraph 207 of the Complaint.

208.    Defendants deny the allegations contained in paragraph 208 of the Complaint.

209.    Defendants deny the allegations contained in paragraph 209 of the Complaint.

## AS A SEVENTH CAUSE OF ACTION FOR VIOLATIONS OF THE NYSHRL: RETALIATION

210.    Defendants repeat and reallege their responses to the foregoing paragraphs and such responses are incorporated by reference as if set forth in full.

211.    Defendants admit the allegations contained in paragraph 211 of the Complaint.

212.    Defendants admit the allegations contained in paragraph 212 of the Complaint.

213.    Defendants deny the allegations contained in paragraph 213 of the Complaint.

214.    Defendants deny the allegations contained in paragraph 214 of the Complaint.

215.    Defendants deny the allegations contained in paragraph 215 of the Complaint.

4824-2610-4046.10

216.   Defendants deny the allegations contained in paragraph 216 of the Complaint.

217.   Defendants deny the allegations contained in paragraph 217 of the Complaint.

## AS AN EIGHTH CAUSE OF ACTION FOR VIOLATIONS OF THE NYSHRL: RETALIATION

218.   Defendants repeat and reallege their responses to the foregoing paragraphs and such responses are incorporated by reference as if set forth in full.

219.   Defendants admit the allegations contained in paragraph 219 of the Complaint.

220.   Defendants admit the allegations contained in paragraph 220 of the Complaint.

221.   Defendants deny the allegations contained in paragraph 221 of the Complaint.

222.   Defendants deny the allegations contained in paragraph 222 of the Complaint.

223.   Defendants deny the allegations contained in paragraph 223 of the Complaint.

224.   Defendants deny the allegations contained in paragraph 224 of the Complaint.

4824-2610-4046.10

## GENERAL DENIAL

1.      Defendants deny each and every allegation, statement, matter and thing in the Complaint that is not expressly admitted or qualified herein.

## DEFENSES

The statement of any defense hereafter does not assume the burden of proof for any issue as to which applicable law places the burden on Plaintiff.

### AS AND FOR A FIRST DEFENSE

The Complaint fails to state any claim upon which relief can be granted.

### AS AND FOR A SECOND DEFENSE

Plaintiff's claims, in whole or in part, are barred by the applicable statutes of limitations.

### AS AND FOR A THIRD DEFENSE

The Court lacks subject matter jurisdiction over all or part of the Complaint.

### AS AND FOR A FOURTH DEFENSE

All actions taken by Defendants with regard to Plaintiff's employment were taken for legitimate, nondiscriminatory and non-retaliatory business reasons and in good faith compliance with all applicable laws.

### AS AND FOR A FIFTH DEFENSE

All actions taken by Defendants were based on upon reasonable factors other than race or any other protected characteristic.

### AS AND FOR A SIXTH DEFENSE

Defendants did not retaliate against Plaintiff in any way.

4824-2610-4046.10

## AS AND FOR A SEVENTH DEFENSE

The employment actions at issue were taken in good faith, and without malice.

## AS AND FOR AN EIGHTH DEFENSE

Plaintiff is not entitled to any equitable relief or penalties.

## AS AND FOR A NINTH DEFENSE

Plaintiff's claims for punitive damages are barred as Defendants did not engage in any willful, reckless or malicious acts.

## AS AND FOR A TENTH DEFENSE

Plaintiff is barred from asserting the claims in the Complaint by the doctrines of laches, waiver, equitable estoppel and unclean hands.

## AS AND FOR AN ELEVENTH DEFENSE

Upon information and belief, Plaintiff has not suffered any damages as a result of the alleged conduct in the Complaint.

## AS AND FOR A TWELFTH DEFENSE

If any damages or losses were sustained by Plaintiff, any entitlement to which is expressly denied, such damages or losses were caused or contributed to by Plaintiff's own actions, inactions, fault or lack of diligence and not by actions or inactions of Defendant.

## AS AND FOR A THIRTEENTH DEFENSE

Upon information and belief, Plaintiff has failed to mitigate his alleged damages, any entitlement to which is expressly denied.

4824-2610-4046.10

## AS AND FOR A FOURTEENTH DEFENSE

Plaintiff fails to state a claim upon which an award of attorneys' fees may be granted.

## AS AND FOR A FIFTHTEENTH DEFENSE

Plaintiff has not been subjected to any tangible or adverse job action or any unequal treatment in the workplace.

## AS AND FOR A SIXTEENTH DEFENSE

Plaintiff's entitlement to any relief is limited by the after-acquired evidence doctrine.

## AS AND FOR A SEVENTEENTH DEFENSE

The claims asserted against Defendants in the Complaint are barred, in whole or in part, because it has established and complied with policies, programs, and procedures for the prevention and detection of unlawful discriminatory practices.

## AS AND FOR AN EIGHTEENTH DEFENSE

The Complaint or any relief sought by Plaintiff is barred, in whole or in part, by such additional defenses as Defendants may have that cannot now be articulated due to the generality of Plaintiff's pleadings and the fact that discovery has not been completed. Accordingly, Defendants reserves the right to supplement the foregoing and to raise additional defenses as may appear as the case progresses.

4824-2610-4046.10

**WHEREFORE**, Defendants respectfully request this Court to enter an Order:

(a) dismissing the Complaint in its entirety with prejudice; and (b) granting such other relief as the Court deems just and proper.

Dated:   New York, New York
        June 14, 2021

KAUFF McGUIRE & MARGOLIS LLP


By:      */s/ Kenneth A. Margolis*
        Kenneth A. Margolis

950 Third Avenue, Fourteenth Floor
New York, NY  10022
Tel. (212) 644-1010
Fax. (212) 644-1936
margolis@kmm.com

*Attorneys for Defendants*

4824-2610-4046.10